# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PELEUS INSURANCE COMPANY | § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-251-S |
| RON SPARKS, INC. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Peleus Insurance Company's Motion for Summary Judgment ("Motion") [ECF No. 15]. The Court has reviewed the Motion, Brief in Support of Peleus' Motion for Summary Judgment ("Plaintiff's Brief") [ECF No. 16], Defendant Ron Sparks, Inc.'s Response to Plaintiff's Motion for Summary Judgment [ECF No. 25], Brief in Support of Ron Sparks, Inc.'s Response to Plaintiff's Motion for Summary Judgment ("Defendant's Brief") [ECF No. 26], Reply in Support of Peleus' Motion for Summary Judgment [ECF No. 28], the summary judgment evidence presented, *see* Pl.'s App. [ECF No. 17]; Def.'s App. [ECF No. 27], and the applicable law. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.   BACKGROUND

This is a declaratory judgment action to determine whether Plaintiff Peleus Insurance Company ("Peleus") owes a duty to defend or indemnify Defendant Ron Sparks, Inc. ("Ron Sparks") against the claims asserted in an underlying personal injury lawsuit currently pending in Washington state court. Compl. [ECF No. 1] ¶ 1. The latest complaint in the underlying lawsuit alleges that Ron Sparks's negligence in demolishing a building next to an O'Reilly Auto Parts ("O'Reilly") store caused "significant damage to a sewage pipeline." Def.'s App. 5-6. As a result, the restroom in the O'Reilly store "experienced a highly pressurized reverse sewage flow incident that ultimately forcibly projected raw sewage out of the toilet." *Id.* at 6. Christian Beck ("Beck"), an O'Reilly employee who was inside the restroom at the time, "was covered by and directly

exposed to the raw sewage, which ultimately led to bacterial infection, sepsis, massive organ failure, resultant neurologic injuries, and other ongoing debilitating injuries and damages." *Id.* at 6, 9.

A commercial general liability policy (the "Policy") issued by Peleus to Ron Sparks in effect at the time provides that Peleus "will pay those sums that [Ron Sparks] becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Pl.'s App. 25. It further states that Peleus "will have the right and duty to defend [Ron Sparks] against any 'suit' seeking those damages." *Id.* But Peleus "will have no duty to defend [Ron Sparks] against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply." *Id.* The "Total Pollution Exclusion" specifies that the Policy "does not apply to" bodily injury "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." *Id.* at 61. Pollutants is defined in the Policy as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 39; *see also id.* ("Waste includes materials to be recycled, reconditioned or reclaimed.").

Peleus now moves for summary judgment, arguing that the claims asserted against Ron Sparks in the underlying lawsuit are excluded from the Policy. *See* Mot. 1-2. Peleus therefore contends that it has no duty to defend or indemnify.

## II.     LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving

2

party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "conclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III.   ANALYSIS

#### A.   *Duty to Defend*

Under Texas law,[1] courts apply the "eight corners rule" when determining an insurer's duty to defend. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599-600 (5th Cir. 2006); *accord*

---

[1] The parties here agree that Texas law governs this dispute. *See* Pl.'s Br. 7-10; Def.'s Br. 3-6.

3

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). The eight corners rule provides that where "the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend." *Graham*, 473 F.3d at 600. "If the petition only alleges facts excluded by the policy, however, the insurer is not required to defend." *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (emphasis omitted) (quoting *Fid. Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). The Court must "resolve all doubts regarding duty to defend in favor of the duty." *Graham*, 473 F.3d at 600; *accord Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Insurance policies are construed "according to common principles governing the construction of contracts, and the interpretation of an insurance policy is a question of law for a court to determine." *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562 (5th Cir. 2010). The Court must interpret the policy to discern the intention of the parties as it is expressed in the policy. *Id.* Whether a contract is ambiguous is also a question of law. *Id.* (citing *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998)). An ambiguity is not present simply because the parties advance conflicting interpretations. It exists "only if the contractual language is susceptible to two or more reasonable interpretations." *Id.* (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)).

The Total Pollution Exclusion language contained in the Policy has been examined by numerous courts. The Fifth Circuit and Texas courts alike have held that such language is unambiguous. *See, e.g., Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008) ("Texas courts have consistently held similar pollution exclusions to be unambiguous. Like those courts, we hold the pollution exclusion here at issue to be unambiguous."); *Nat'l Union Fire*

4

*Ins. Co. of Pitt., PA v. CBI Indus. Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (holding that total pollution exclusion in policy is neither patently nor latently ambiguous). The Court agrees and finds that the Total Pollution Exclusion in this case is clear and susceptible of only one possible interpretation: the preclusion of coverage for liability stemming from bodily injury caused by the discharge, dispersal, seepage, migration, release, or escape of pollutants. *See Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 409-10 (5th Cir. 1995) (affirming district court's interpretation of a similar total pollution exclusion as such). The Court therefore must determine whether the alleged facts are excluded by the Policy.

As an initial matter, there is no dispute that the underlying lawsuit alleges bodily injury. *See, e.g.*, Def.'s App. 5 ("Beck suffered severe and life-altering injuries that have resulted in significant neurological damage and blindness . . . ."). Nor is there any dispute as to whether these injuries were allegedly caused by exposure to raw sewage. *See, e.g., id.* at 6 (alleging that "Beck was covered by and directly exposed to the raw sewage, which ultimately led to" severe injury). The issue then is whether raw sewage is a pollutant under the Policy, and, if so, whether it was "discharge[d], dispers[ed], seep[ed], migrat[ed], release[d] or escape[d]." Pl.'s App. 61.

As stated above, the Policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* at 39. In analyzing an identical definition of pollutants, the Fifth Circuit has defined "irritant" as a "substance that produces a *particular* effect, not one that generally or probably causes such effects." *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 456 (5th Cir. 2009) (emphasis in original) (quoting *Am. States Ins. Co. v. Nethery*, 79 F.3d 473, 476 (5th Cir. 1996)). In *Nautilus Insurance Co.*, the court held that an underlying plaintiff's allegation that she encountered a strong enough concentration of carbon monoxide to cause injuries to her baby in

utero involved a pollutant. 566 F.3d at 456. Similarly, here, the underlying lawsuit alleges that Beck's bodily injuries were a direct result of exposure to raw sewage. *See* Def.'s App. 17 ("Beck suffered severe staph bacterial infection, toxic shock syndrome, sepsis, massive organ failure, sudden cardiac death . . . ."). These allegations clearly involve a "pollutant" as defined by the Policy. *See United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 525 F.3d 400, 401-02 (5th Cir. 2008) (noting that allegations of injury caused by "toxic levels" of unknown "chemicals or vapors" assert injuries from a pollutant as defined by the pollution exclusion).

The Court further finds that the underlying lawsuit claims that the raw sewage was "released." The Fifth Circuit has defined "release" as setting free a pollutant "from confinement." *Nautilus Ins. Co.*, 566 F.3d at 456 (quoting *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 573 (Tex. App.—San Antonio 2002, pet. denied). The underlying lawsuit explicitly asserts that raw sewage was released and set free from confinement. *See* Def.'s App. 6 (alleging that raw sewage was "forcibly projected . . . out of the toilet"). The release of raw sewage from a toilet into a restroom satisfies the Total Pollution Exclusion's requirement of discharge, dispersal, seepage, migration, release, or escape of a pollutant.

Accordingly, the Court holds that the underlying lawsuit only alleges facts excluded by the Policy. The Motion is therefore **GRANTED** as to Peleus's duty to defend.

## B. *Duty to Indemnify*

The duty to defend and the duty to indemnify are "distinct and separate duties." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821-22 (Tex. 1997)). "[T]he existence of one does not necessarily depend on the existence or proof of the other." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 745 (Tex. 2009). An insurer's duty to indemnify generally cannot be

ascertained until the completion of litigation, when liability is established, if at all. *See Colony Ins. Co.*, 647 F.3d at 253; *Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997); *see also VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 459 (5th Cir. 2011) ("[A]n insurer's duty to indemnify typically can be resolved only after the conclusion of the underlying action."). "This is because, unlike the duty to defend, which turns on the pleadings, the duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the terms of the policy." *Colony Ins. Co.*, 647 F.3d at 253.

Here, the underlying lawsuit that gives rise to this litigation remains pending in Washington state court, so the operative facts that will control the duty to indemnify have not yet been established. Accordingly, the Court **DENIES WITHOUT PREJUDICE** the Motion as to Peleus's duty to indemnify. *See id.* at 254 ("Where there has been an underlying trial on the issue of liability, the facts adduced at trial might differ from the allegations, and thus, a duty to indemnify could be shown notwithstanding the absence of a duty to defend.").

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Peleus Insurance Company's Motion for Summary Judgment [ECF No. 15].

**SO ORDERED.**

SIGNED September 8, 2022.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**